IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SHAWN E. DENNIS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 6:14-cv-03468-NKL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
|    Defendant. | ) |

**ORDER**

Plaintiff Shawn E. Dennis appeals the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income benefits. The decision is affirmed.

**I.   Background**

Dennis was born in 1973. She filed applications for benefits in June 2012, alleging she became disabled beginning August 17, 2009, due to physical and mental health issues. The Administrative Law Judge denied Dennis' applications on August 12, 2013, and the Appeals Council denied her request for review on September 3, 2014.

Dennis filed applications for disability and supplemental security income benefits prior to the ones at issue here, in which she also claimed she became disabled beginning August 17, 2009. Those prior applications were finally denied on April 25, 2012.[1] In the present case, the ALJ noted Dennis' prior applications but expressly refused to reopen them [Tr. 11-12], and

---

[1] The ALJ issued the decision denying the prior applications on April 25, 2012 and Dennis did not appeal to the Appeals Council. A determination or decision made at any step of the administrative review process becomes final and binding if the claimant does not timely appeal. 20 C.F.R. 404.987(a) and 416.1487(a).

Dennis does not challenge that aspect of the ALJ's decision. Thus, the relevant alleged disability period for purpose of the present case is April 26, 2012 (the day after the final denial of the prior applications) through August 12, 2013 (the date of the final decision here).

Dennis focuses on physical issues in this appeal.

### A. Medical history and opinion evidence

Dennis saw her rheumatologist Melinda Reed, M.D., in March 2012, reporting a constant dull fibromyalgia pain, with difficulty sleeping. Dennis had 14 of 18 tender points. Dr. Reed had previously prescribed Elavil and Lyrica, but the Elavil was contraindicated by Dennis' psychiatric treatment. The Lyrica made Dennis dizzy but she continued to take a low dose, because it was helpful. Dr. Reed emphasized the importance of getting good sleep, and being active and exercising. There are no records reflecting Dennis saw Dr. Reed any time between April 26, 2012 and August 12, 2013.

In September 2012, Dennis saw a nurse practitioner at the Thayer Medical Clinic, reporting increased back pain. Hip x- rays were normal, but spinal imaging showed some potential problems and Dennis was referred to pain management specialist Ricardo Kennedy, M.D.

Dr. Kennedy examined Dennis in October 2012. He noted Dennis had paraspinous tenderness, and pain with range of motion in her lumbar spine, but no neurological deficit and negative straight leg raising, a coordinated and smooth gait, and 5/5 motor strength in her bilateral lower extremities. Dr. Kennedy ordered a lumbar spine MRI, which showed L5-Sl disc bulging and spondylosis, with posterior central disc protrusion and mild encroachment of the L5 neural foramina. He prescribed Tramadol and Skelaxin and noted Dennis should consider a sacroiliac joint injection and lumbar epidural steroidal injection. Dennis had follow-up appointments at the pain clinic in November 2012 and January 2013, and reported that her pain

medication was providing "good benefit." [Tr. 261.] Medications were continued, but no injections were performed.

Dennis saw Ronnie Hiemstra, M.D. in 2013 for a "recheck" of her fibromyalgia, reporting she was "doing well without any problems" and asking to resume taking Lyrica because it helped "tremendously." [Tr. 309.] Dr. Hiemstra prescribed Lyrica.

The medical record reflects Dennis is morbidly obese.

### B. Dennis' work history, self reports[2], and testimony

Dennis has a twelfth-grade education. She has past relevant, light work as a front desk clerk, wire harness assembler, optical assembler, grocery clerk, order puller, small products assembler, and fast food worker, but has engaged in no substantial gainful activity since August 17, 2009.

Dennis alleged she is unable to work due to fibromyalgia, bursitis and bipolar disorder. She reported that pain, dizziness and heaviness in her arms make it difficult for her to perform personal care more than a couple times a week, and she avoids bending because it can bring on dizziness. She stated she cannot lift more than 10 pounds, squat, bend, or kneel, and cannot walk more than one half of a mile before needing to rest 30 to 45 minutes. She stated that she and her school-age daughter reside with family members, and that she is able to ensure that her daughter is fed, bathes herself, and does her chores. She can keep her bedroom clean, prepare simple meals and do her laundry with no difficulty. She can play video games for an hour at a time with her daughter, and can focus on doing latch hook craft projects, reading, and watching television much of the day. She is able to drive a vehicle and has a driver license.

At the hearing of June 6, 2013, Dennis testified she cannot do latch hook crafts anymore due to hand pain, cannot use a computer for more than 30 minutes before her wrists hurt, and

---

[2] Exhibits B4E and B5E, Dennis' "Function Report—Adult" and "Missouri Supplemental Questionnaire." [Tr. 202-213 and Tr. 214-216.]

3

cannot sit more than 20 minutes before having back pain. She is now living in government housing three hours away from her parents, and is able to live on her own with her daughter, having recently won a custody battle to maintain residential placement of her daughter. She testified she has all-over body pain due to her fibromyalgia, causing her to lie down three to five times a week for at least 20 minutes at a time. She is able to do 30-minute shopping trips, and to attend her daughter's school events, such as choir practice, family game night, or end-of-the-year events. She testified she has severe headaches once a week lasting all day. She can stand for one hour at a time, walk for 30 to 45 minutes at a time, and lift 10 pounds. She testified that she can pick up small objects but her hands hurt after 30 minutes. She testified that her medication causes drowsiness.

### C. The ALJ's decision

The ALJ found that during the relevant period, Dennis had severe impairments of obesity, fibromyalgia, L5-S1 degenerative disc disease, lumbosacral spondylosis, bipolar disorder, and social anxiety disorder. The ALJ found Dennis did not meet Listings under Section 1.00, Musculoskeletal System, or Section 14.00, Immune System; Listing 12.04, Affective Disorders; or Listing 12.06, Anxiety-Related Disorders.

The ALJ found Dennis has the residual functional capacity to perform:

> [L]ight work as defined in 20 CFR 404.1567(b) and 416.967(b) in that she can lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for four hours out of an eight-hour workday and sit for four hours out of an eight-hour workday. However, she must have the option to stand from sitting every 30 minutes without leaving the work station or being off-task. She can occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. She can never balance, but can occasionally stoop, kneel, crouch and crawl. She must avoid vibration, extreme cold and unprotected heights. She is limited to occasional interaction with co-workers and supervisors, but can have no interaction with the general public.

4

Case 6:14-cv-03468-NKL   Document 13   Filed 06/22/15   Page 4 of 10

[Tr. 16.] The ALJ further found Dennis' "statements concerning the intensity, persistence and limiting effects of [her described] symptoms are not entirely credible for the reasons explained in [the] decision." [Tr. 18.]

## II. Discussion

Dennis primarily argues that the RFC was not properly developed because the ALJ did not base it on substantial medical evidence, and that the RFC fatally lacks adequate explanation of how it is supported by medical evidence. Dennis also challenges the ALJ's credibility determination.

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008). "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

### A. Credibility analysis

Dennis' credibility argument will be addressed first because credibility bears on formulation of the RFC. Credibility is "primarily for the ALJ to decide, not the courts." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (internal quotation and citation omitted). When substantial evidence on the record as a whole supports the ALJ's credibility finding, it should not be disturbed. *See Peña v. Chater,* 76 F.3d 906, 908 (8th Cir. 1996).

"Among the considerations the ALJ takes into account when determining a claimant's RFC is the claimant's subjective complaints of pain." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (holding that the ALJ's credibility finding supported the RFC finding). An ALJ may

5

not disregard a claimant's complaints solely because they are not fully supported by objective medical evidence. *See Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). "Subjective complaints may be discounted if the evidence as a whole is inconsistent with" them. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). Thus, to analyze subjective complaints of pain, an ALJ considers the entire record, including the medical records; statements from the plaintiff and third parties; the plaintiff's daily activities; the duration, frequency, and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *See* 20 C.F.R. §§ 404.1529 and 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Dennis argues that the ALJ discredited her subjective complaints "basically" because they were inconsistent with the objective findings. [Doc. 9, p. 17.] The ALJ certainly considered the objective medical evidence or lack thereof, noting the record did not show "a significant degree of muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, gait disturbance, or reduced range of motion in the spine or joints[.]" [Tr. 18.] But the ALJ also considered other factors. The ALJ noted Dr. Reed's recommendation that Dennis exercise and be active. Dennis points to no restrictions placed on her physical activity by a physician during the relevant time period. "In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations." *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (*citing Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)).

The ALJ further noted that Dennis' minimal treatment for fibromyalgia suggests her fibromyalgia was not as limiting as she claimed. [Tr. 18.] *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); SSR 96-7P, 1996 WL

374186, *7 (July 2, 1996) (noting that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

The ALJ also considered Dennis' daily activities, which were more extensive than one would expect for someone with debilitating pain. [Tr. 17.] They included independent personal care; doing laundry; caring for her 11-year old daughter who lived with her; attending her daughter's school events such as choir practice and family game night; and shopping when necessary.

Furthermore, the ALJ accounted in the RFC for Dennis' testimony the ALJ did find credible. Dennis testified she could sit for only 30 to 45 minutes before needing to take a break, and the ALJ included the limitation in the RFC that Dennis needed the option to stand up every 30 minutes. Dennis testified she could walk 30 to 45 minutes continuously, stand one hour continuously, and lift about ten pounds. Although the ALJ limited Dennis to lifting 20 pounds and standing and walking four hours, the other restrictions the ALJ included reduced Dennis' RFC to sedentary exertional level jobs. Sedentary work is performed primarily while sitting, and requires lifting only ten pounds, and standing and walking for only two hours. 20 C.F.R. §§ 404.1567(a) and 416.967(a); SSR 83-10, 1983 WL 31251, *5. Dennis' testimony is consistent with an ability to perform the exertional requirements of sedentary work. *See, e.g., Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (noting that in performing credibility determination, the ALJ did not discount claimant's subjective complaints in total and accounted for many of them in the RFC; ALJ's credibility determination was not disturbed).

Substantial evidence on the record as a whole supports the ALJ's credibility finding. Accordingly, it will not be disturbed.

7

### B. Formulation of the RFC

Residual functional capacity is not a "medical determination" that "must be made by a doctor," as Dennis states. [Doc. 9, p. 15.] It is ultimately an administrative determination by the Commissioner. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); 20 C.F.R. §§ 404.1545-.1546 and 416.945-.946. More specifically, the RFC is what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a). It is an assessment based upon all of the relevant evidence including a claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. 20 C.F.R. § 404.1545(a). *See also* SSR 96-8P, 1996 WL 37418, at *7, "Policy Interpretation Ruling, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims" (June 6, 1996) (RFC analysis should consider medical and non-medical evidence). Put another way, the RFC must be based upon all of the substantial evidence, and must be supported by at least some medical evidence. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). The claimant has the burden to prove the RFC at step four of the sequential evaluation. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Dennis argues in support of reversal that "[i]t is not apparent what substantial medical evidence the ALJ used to derive his RFC regarding [Dennis'] physical limitations." [Doc. 9, p. 15.] She further argues that the ALJ "provided a summary of the medical evidence," but failed to explain how the medical evidence supports the RFC. [*Id.* at p. 16.] An ALJ's failure to address a question that should have been addressed does not mandate reversal. Reversal is necessary only if the failure prejudices the claimant. *Samons v. Astrue,* 497 F.3d 813, 821-22 (8th Cir. 2007) (citations omitted). An arguable deficiency in opinion writing technique is not grounds for reversal when that deficiency had no bearing on the outcome. *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir. 1992). The ALJ's analysis here provides "an adequate basis for meaningful judicial review" and is supported by substantial evidence. *See Cichocki v. Astrue*,

8

729 F.3d 172, 177 (2d Cir. 2013) (holding that the ALJ's failure to explicitly engage in a function-by-function, RFC analysis does not require remand where the "ALJ's analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous").

In determining Dennis' RFC, the ALJ discussed her visit to her rheumatologist, Dr. Reed, in March 2012, which was prior to the relevant alleged disability period. She was taking Lyrica at a lower dose because it made her dizzy. Dr. Reed recommended getting enough sleep, and exercise and being active, and prescribed a lower dose of Lyrica. As the ALJ noted, Dennis did not see Dr. Reed at all during the relevant period of April 26, 2012 through August 12, 2013. She next saw a doctor for a recheck of her fibromyalgia a year later, in March 2013. At that visit, she reported that she was doing well without any problems, and asked to resume taking Lyrica because it helped tremendously. The doctor renewed the prescription.

As for Dennis' back issues, the ALJ noted that a July 2012 MRI scan showed degenerative disc disease and spondylosis at L5-S1 with posterior central disc protrusion and mild encroachment of the neural foramina at L5, and negative hip x-rays. As the ALJ noted, Dennis reported hip and back pain to her nurse practitioner in September 2012. In October 2012, a pain management specialist, Dr. Kennedy, found paraspinous tenderness and pain with range of motion in the spine, but no neurological deficits, a coordinated and smooth gait, full strength in her lower extremities, and negative straight leg raise test. Dr. Kennedy prescribed pain medication and advised Dennis to consider sacroiliac joint injections and lumbar epidural steroid injections, which Dennis did not decide to have. At pain clinic follow up appointments in November 2012 and January 2013, Dennis reported that her pain medication was helping. The record does not show any treatment with Dr. Kennedy after January 2013.

The ALJ also properly considered Dennis' obesity in determining her RFC, noting that it exacerbated her fibromyalgia and musculoskeletal conditions. [Tr. 19.] *See Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009) ("Because the ALJ specifically took Heino's obesity into account in his evaluation, we will not reverse that decision."). As discussed above, the ALJ considered Dennis' subjective complaints of pain in formulating the RFC and found them not to be entirely credible. But the ALJ did factor into the RFC the subjective complaints he did find credible. The ALJ also considered Dennis' daily activities in formulating the RFC.

The RFC is supported by substantial evidence, including medical evidence.

Dennis argues the ALJ should have ordered a consultative examination to assess her physical limitations. But a consultative exam is required only when an ALJ needs additional evidence to decide the claim, 20 C.F.R. 404.1959 and 404.1915a, and *Martise,* 641 F.3d at 926-27, and nothing in the record suggests additional evidence was necessary to do so here. The record simply does not contain credible evidence to support Dennis' position. And it was Dennis' burden to prove RFC at Step 4 of the sequential analysis.

The ALJ's RFC determination will not be disturbed.

### III. Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: June 22, 2015
Jefferson City, Missouri